**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Richard MALDONADO, Defendant– Appellant.**

**No. 94–1560.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1994.

Decided Oct. 28, 1994.

Barry Rand Elden, Diane Saltoun, argued, Asst. U.S. Attys., Criminal Receiving, Appellate Div., Chicago, IL, for U.S.

Eugene O'Malley, argued, Chicago, IL, for Richard Maldonado.

Before CUMMINGS, ESCHBACH, and MANION, Circuit Judges.

ESCHBACH, Circuit Judge.

Defendant Richard Maldonado appeals from his conviction for possession with intent to distribute cocaine, a violation of 21 U.S.C. § 841(a)(1). Maldonado challenges the district court's denial of his motion to suppress evidence on the ground that his Fourth Amendment rights were violated. Maldonado also claims that the trial court erred in admitting statements he made during a plea bargain proffer with the government. For the reasons stated below, we will affirm.

## I. Background

On February 19, 1993, Richard Maldonado was traveling from Los Angeles to New York on Amtrak Train Number 4 when he disembarked at a stop at Chicago's Union Station. Agents Gary Boertlein and Kenneth Krok, two members of a Drug Enforcement Administration (DEA) task force, were conducting routine surveillance of this particular train because it was known to travel along a popular route for drug traffickers. Agent Boertlein noticed Maldonado walking rigidly from the train toward the station house and in such a manner as to attract the agent's attention. Agent Boertlein also testified that he had observed an unusual square shape protruding from Maldonado's bag.

Agents Boertlein and Krok decided to follow Maldonado into the inner station. The two agents approached Maldonado and, after

identifying themselves as police officers, asked if he would mind speaking with them. Maldonado calmly agreed. Upon request, Maldonado showed the agents his train ticket and an identification card. The train ticket had been purchased in defendant's name, in cash, one-way from Los Angeles to New York, and no telephone contact number had been provided. The agents briefly interviewed Maldonado and then asked him if they could search his luggage because they were looking for people traveling with large quantities of illegal drugs. Maldonado consented to the search of his luggage. While searching Maldonado's bag, Agent Boertlein came across two boxes which were each marked "juicer" and which purportedly contained juice machines inside.

Both parties acknowledge that Agent Boertlein requested further consent from Maldonado to search the "juicer boxes." However, at the suppression hearing there were discrepancies in the testimony regarding Maldonado's response to Agent Boertlein's request. The two DEA agents both testified that Maldonado affirmatively consented to Agent Boertlein's request to search the juicer boxes; nonetheless, neither agent was able to recall the specific words used by Maldonado to express his consent. Agent Krok testified that he did not hear Maldonado's response because of the background noise from the electronic doors, but that he did see Maldonado make an oral response and nod his head in a positive manner. Agent Boertlein testified that Maldonado made an affirmative response to his request to search the boxes, but Boertlein was unable to recall the exact words Maldonado used.

Maldonado was able to testify in greater detail. He testified that Agent Boertlein asked him to open the juicer boxes, which were taped shut. Maldonado testified that he told Agent Boertlein that he did not want to open the juicer boxes because the items inside were gift wrapped. According to Maldonado, Agent Boertlein then volunteered to open the containers himself. Maldonado testified that he again expressed his concern regarding the gift wrap, and Agent Boertlein responded that he had been conducting these kinds of searches for five years and that he

would be careful not to disturb the gift wrapping. The district court made no explicit determination as to which testimony it found more credible, but the court evaluated Maldonado's testimony in determining the scope of consent because it was "[t]he only testimony we have as to what words were spoken by Mr. Maldonado." Tr. of Sept. 16, 1993 at 341.

The parties are at least in agreement on what transpired next. Agent Boertlein opened the juicer boxes and found no gift-wrapped juice machines inside the boxes; instead, he found several kilogram-sized packages of cocaine. Maldonado was subsequently placed under arrest.

On March 9, 1993, a grand jury indicted Maldonado on one count of possession with intent to distribute approximately six kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1). Maldonado filed a motion to suppress the cocaine seized by the DEA agents. At the end of an extensive suppression hearing, the district court ruled that Maldonado had consented both to the initial encounter with the officers and to the search of his luggage. The court also stated that under *Florida v. Jimeno,* 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), Maldonado's general consent to the search of his luggage included consent to search the juicer boxes found within the luggage. The court further determined that Maldonado never withdrew his consent. The court found that Maldonado had instead limited the parameters of his consent in the sense that he did not want the packaging of the material inside the juicer boxes to be harmed. The district court concluded that the DEA agents had not violated Maldonado's Fourth Amendment rights, and the motion to suppress was therefore denied.

A jury found Maldonado guilty, and the district court sentenced him to 180 months' imprisonment. Maldonado filed a timely appeal, challenging the district court's denial of his motion to suppress as well as the admission of his proffer statements into evidence at trial. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. Analysis

### A. Fourth Amendment issues

■ On appeal, Maldonado raises two separate Fourth Amendment challenges to the district court's denial of his motion to suppress evidence. First, Maldonado claims that the drug enforcement officers' initial encounter with him constituted an illegal seizure. Second, Maldonado claims that Agent Boertlein's search of the juicer boxes exceeded the scope of his consent to search his luggage. We will not disturb the district court's denial of a motion to suppress unless the decision was clearly erroneous. *United States v. McCarthur*, 6 F.3d 1270, 1275 (7th Cir.1993); *United States v. Withers*, 972 F.2d 837, 841 (7th Cir.1992).

### 1. The initial encounter

■ Maldonado contends that the DEA agents' initial encounter with him violated his Fourth Amendment rights. However, not all encounters between police officers and citizens implicate Fourth Amendment concerns. *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir.1990) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968)). A police-citizen encounter which involves no restraint on the citizen's liberty, and which is characterized by an officer seeking the citizen's voluntary cooperation through noncoercive questioning, is not a seizure within the meaning of the Fourth Amendment. *See United States v. Johnson*, 910 F.2d 1506, 1508 (7th Cir.1990), *cert. denied*, 498 U.S. 1051, 111 S.Ct. 764, 112 L.Ed.2d 783 (1991). "Voluntary encounters between a private person and law enforcement officers are not seizures and, consequently, not subject to the strictures of the fourth amendment." *United States v. Berke*, 930 F.2d 1219, 1221 (7th Cir.), *cert. denied*, ― U.S. ――, 112 S.Ct. 269, 116 L.Ed.2d 221 (1991).

"The question of whether a particular encounter is voluntary 'is a factual one, dependent on the circumstances of each case; accordingly, our standard of review is a limited inquiry into whether the decision of the district court was clearly erroneous.'" *Id.* (quoting *United States v. Espinosa–Alvarez*, 839 F.2d 1201, 1205 (7th Cir.1987)). The law is well established that "if, in the totality of the circumstances, a reasonable person would not believe that his freedom of movement was restrained, or believes that he remains at liberty to disregard a police officer's request for information, a seizure has not occurred." *Edwards*, 898 F.2d at 1276 (quoting *Espinosa–Alvarez*, 839 F.2d at 1205 (citations omitted)). The district court determined that Maldonado's encounter with the drug enforcement officers was not a coercive stop. Thus, the issue before this Court is whether the district court's implicit ruling that no seizure occurred was clearly erroneous.

Looking at the totality of the circumstances, the record supports the district court's conclusion that this was a consensual encounter and that a reasonable person in Maldonado's position would not have felt coerced. The encounter took place in the middle of a public train station, the drug enforcement officers were dressed in civilian attire, and no weapons were displayed. Furthermore, the agents testified that they specifically told Maldonado that he was free to leave, that he was not under arrest, and that he was not required to answer their questions. The district court's decision that Maldonado freely consented to the encounter was not clearly erroneous. As this Court noted under similar circumstances in *United States v. High*, 921 F.2d 112, 115 (7th Cir. 1990), "not only was the fourth amendment not violated, but it was not implicated because [the defendant] voluntarily consented to the initial encounter and subsequent questioning." *Id.* Since the encounter was not a seizure under the Fourth Amendment, Maldonado's argument that the ensuing search of his luggage was automatically tainted must fail.[1]

---

1. We need not address the issue of whether the drug enforcement officers had a reasonable suspicion to justify an investigatory stop (i.e., a *Terry* stop) of Maldonado. Such an inquiry is unnecessary since the district court found that Maldonado consented to the encounter with the drug enforcement officers, and the court's decision was not clearly erroneous. In a consensual encounter such as that which was found to have occurred in the instant case, "the degree of sus-

### 2. Search of the luggage and juicer boxes

■ The district court also found that Maldonado had freely consented to the search of his luggage. In support of this conclusion, the court pointed out that Maldonado had bent down, unlocked the bag within which the cocaine packages were ultimately found, and allowed the agents to examine the inside of the bag. Consensual searches are acceptable under the Fourth Amendment because it is reasonable for law enforcement officers to conduct a search once they have been permitted to do so. *Jimeno*, 500 U.S. at 250–51, 111 S.Ct. at 1803–04; *United States v. Duran*, 957 F.2d 499, 501 (7th Cir. 1992).

■ Maldonado does not contest the district court's finding that he consented to the search of his luggage;[2] rather, he argues that Agent Boertlein's search of the juicer boxes exceeded the scope of his initial consent to the search of his luggage. Thus, we must first determine what was the scope of Maldonado's initial consent. The scope of a search is generally characterized by its expressed object. *Jimeno*, 500 U.S. at 251, 111 S.Ct. at 1803–04 (citing *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). Moreover, the scope of consent is determined by how a reasonable person would have understood the conversation between the law enforcement officer and the criminal suspect. To be succinct, we use a standard of "objective reasonableness." *Id.; United States v. Dorsey*, 27 F.3d 285, 290 (7th Cir.1994).

It is undisputed that before Maldonado consented to the search of his luggage, the drug enforcement officers told him that they were looking for individuals traveling with large quantities of illegal drugs. Thus, the expressed object of the search was illegal drugs. When Maldonado gave the DEA agents his permission to search his luggage for drugs, a reasonable person would have understood Maldonado's consent for the search of his luggage to include permission to search any items inside his luggage which might reasonably contain drugs. Under similar facts, this Court concluded in *Berke* that the criminal suspect "should have expected that the officers would examine the contents to discover whether narcotics were within the bag." *Berke*, 930 F.2d at 1223. The juicer boxes found in Maldonado's luggage had been repackaged and closed with tape, and such boxes may be thought by a reasonable person to contain drugs. Moreover, courts can look at the defendant's conduct to help determine the scope of a consensual search. *Id.* (citing *United States v. Hardin*, 710 F.2d 1231 (7th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 286, 78 L.Ed.2d 263 (1983)). The record reflects that Maldonado was calm and cooperative throughout the encounter, and the district court found that Maldonado actually bent down and unlocked the luggage himself. Agent Krok also testified that Maldonado nodded his head in response to Agent Boertlein's request for further consent to search the juicer boxes, and the district court never discredited this testimony. Looking at all the surrounding circumstances, we conclude that Maldonado's consent to search his luggage allowed the drug enforcement officers to search the juicer boxes found inside the luggage under the circumstances presented here without violating the Fourth Amendment.

This Court addressed the scope of consent issue in *United States v. Dyer*, 784 F.2d 812 (7th Cir.1986). In *Dyer*, two DEA agents approached the suspect in the airport, and the encounter was found to be consensual. Dyer consented to a search of his luggage, and the agents found a brown cardboard box inside the luggage. Dyer then gave further consent to search the brown box, and the agents found a white box inside the brown cardboard box. Without requesting any further consent, the DEA agents opened the

---

picion that is required is zero." *Edwards*, 898 F.2d at 1276 (quoting *United States v. Serna–Barreto*, 842 F.2d 965, 966 (7th Cir.1988)).

**2.** Although Maldonado does not contest this issue, we should make it clear that the district court's determination that Maldonado freely con-

sented to the search of his luggage was well supported by the evidence and was not clearly erroneous. *See United States v. Rice*, 995 F.2d 719, 722 (7th Cir.1993) (district court's factual and legal determinations on motion to suppress are reviewed for clear error).

white box and found a one-gallon black can which was fastened shut. Again without any further consent, the agents removed the cap from the can and found a plastic bag of cocaine inside the black container. In affirming the district court's denial of Dyer's motion to suppress, this Court held that "[t]he consent to search luggage validates the search both of the luggage and of containers within the luggage." *Id.* at 816. More recently, the United States Supreme Court visited this issue in *Florida v. Jimeno* and held that a general consent given by a criminal suspect to search his car included consent to search containers found inside the car that the police had reason to believe contained drugs. *Jimeno,* 500 U.S. at 251, 111 S.Ct. at 1803–04; *see also United States v. Wilson,* 938 F.2d 785, 788–89 n. 6 (7th Cir.1991) (acknowledging the holding of *Jimeno* ), *cert. denied,* —— U.S. ——, 112 S.Ct. 946, 117 L.Ed.2d 115 (1992). Finally, our position is supported by the decisions of other circuits which have since addressed this issue in light of *Jimeno. See, e.g., United States v. Kim,* 27 F.3d 947, 956 (3rd Cir.1994) (holding that suspect's general consent to search his luggage covered the search of sealed can of vegetable protein found inside his luggage); *United States v. Springs,* 936 F.2d 1330, 1334 (D.C.Cir.1991) (holding that suspect's consent to the search of her tote bag extended to the search of a closed baby powder container found within the bag). Following this clear line of authority, we affirm the district court's finding that Maldonado's consent to search his luggage extended to the search of the juicer boxes found inside his luggage.

■ Having determined the scope of Maldonado's consent to search his luggage, we must now examine whether Maldonado limited the scope of that consent. Maldonado argues that he withdrew or limited the scope of his consent to prohibit Agent Boertlein from searching the juicer boxes, and he correctly points out that the case law leaves open the possibility for the criminal suspect to limit the scope of his consent or to withdraw it completely. *See Jimeno,* 500 U.S. at 252, 111 S.Ct. at 1804 ("A suspect may of course delimit as he chooses the scope of the search to which he consents."); *Berke,* 930 F.2d at 1223 ("*Nothing in the record indi-*

*cates that Mr. Berke attempted to clarify or withdraw his consent* after he realized that the officers were going to search, not just 'look' inside the suitcase.") (emphasis added).

However, the district court found that Maldonado did not withdraw his consent, nor did he limit the scope of his consent in the sense of refusing to allow Agent Boertlein to look inside the juicer boxes. Instead, the court found that Maldonado simply expressed his concern that he did not want the gift-wrapped packages inside the juicer boxes to be damaged by the search. In deciding this issue, the district court held:

> The conversation that defendant Maldonado testified about, in my opinion, from evaluating all the evidence and all of the circumstances of the occurrence that afternoon, was that defendant Maldonado was concerned that the packaging not be harmed in any way, that because the items in the box were gift-wrapped, he wanted the packaging to remain. His concern was the integrity of the packaging, not the refusal to look inside the packaging....
>
> The concern here and the expression, which is the only expression I can evaluate, was concern over the gift wrapping. Well, as we've seen from looking at the physical evidence, there wasn't any gift wrap, although I accept the further testimony of Mr. Maldonado that he was told there was gift wrapping. And, again, the fact that he was told there was gift wrapping prior to getting on the train with the boxes which contained the cocaine, indicates to me that Mr. Maldonado did not want the packaging harmed in any way, and that he was not refusing to allow an examination of the items inside. He just wanted that examination, if it was going to take place, to take place in a manner so as to not harm the packaging.

Tr. of Sept. 16, 1993 at 343–44.

■ Determining the parameters of a consensual search is an issue of fact that must be distilled from the totality of the circumstances surrounding the search; moreover, the resolution of such factual questions is entrusted to the district court and will not be lightly overturned on appeal.

*United States v. Hardin*, 710 F.2d 1231 (7th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 286, 78 L.Ed.2d 263 (1983) (citations omitted). The district court held an extensive suppression hearing and carefully examined (indeed, scrutinized) the testimony presented by both parties. Looking at the totality of the circumstances, the district court determined that Maldonado did not withdraw consent but instead limited the parameters of his consent in the sense that he did not want the packaging of the material inside the juicer boxes to be harmed.[3] The record supports this factual finding, and we therefore will not disturb the district court's determination. *See United States v. Mendenhall*, 446 U.S. 544, 559, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497 (1980) (holding that district court was entitled to view suspect's statement that "she had a plane to catch" as a limiting parameter that the search be conducted quickly). Thus, we find that the district court did not commit clear error in denying Maldonado's motion to suppress.

### B. Admissibility of proffer statements

■ Finally, Maldonado argues that the trial court erred in admitting statements he made during a plea bargain proffer with the government. On March 5, 1993, Maldonado met with government agents to enter into plea negotiations. Prior to any discussions, representatives from the United States Attorney's office gave Maldonado and his lawyer a "proffer letter" to read. The letter requested a proffer of Maldonado's testimony, and it also contained a warning that the government could use the resulting proffer statement at trial for purposes of impeachment or rebuttal testimony should Maldonado testify contrary to the substance of the proffer. After both Maldonado and his lawyer signed the proffer letter, Maldonado provided the government with information. During the proffer session, Maldonado admitted that he had distributed cocaine on other occasions and that he had consented to Agent Boertlein's request to search his luggage.

At trial, Maldonado testified on his own behalf. His testimony on direct examination contradicted some of the statements he had made during his proffer session. The government informed the court that it intended to use the proffer statements to impeach Maldonado, and Maldonado objected. The trial court ruled that the proffer statements were admissible for impeachment purposes. Maldonado now appeals.

■ Under Federal Rule of Criminal Procedure 11(e)(6) and Federal Rule of Evidence 410, statements made during plea negotiations are generally not admissible at trial. However, the law in this Circuit is well established that such proffer statements can be used for impeachment purposes if a defendant signs a proper waiver. *United States v. Dortch*, 5 F.3d 1056, 1068 (7th Cir.1993) (holding that defendant "waived his rights under Rule 11(e)(6) and Rule 410 when he signed the proffer letter"), *cert. denied,* —— U.S. ——, 114 S.Ct. 1077, 127 L.Ed.2d 394 (1994); *United States v. Goodapple*, 958 F.2d 1402, 1408–09 (7th Cir.1992) (same). In *Goodapple*, this Court stated that the "easy answer" to the defendant's objection that the government could not use his proffer statements to impeach him at trial "is that the objection was waived when he signed [the proffer letter]." *Goodapple*, 958 F.2d at 1409. We find that *Goodapple* is controlling on this point, and, further, we agree with its holding.

Maldonado points out that the Ninth Circuit has recently held that the protection against the admission of statements made during plea negotiations cannot be waived, *United States v. Mezzanatto*, 998 F.2d 1452, 1456 (9th Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 1536, 128 L.Ed.2d 189 (1994), and he asks us to depart from Seventh Circuit precedent and adopt the position of the Ninth Circuit. We are not inclined to do so. Moreover, this Court has already addressed the issue since the *Mezzanatto* decision. *See Dortch*, 5 F.3d at 1067–68. In *Dortch*, we reiterated our holding in *Goodapple:* "A defendant waives any objection to the use of his

---

**3.** Maldonado certainly cannot argue that Agent Boertlein failed to act within the limiting parameter that he not damage the gift wrapping inside the juicer boxes because, as it turned out, the boxes did not contain any gift-wrapped juicers.

own proffer statements to impeach him at trial when he signs a proffer letter that specifically grants the government permission to impeach him if he testifies inconsistently, and later proceeds to testify inconsistently at trial." *Dortch,* 5 F.3d at 1068 (citing *Goodapple,* 958 F.2d at 1409.) Our position has not changed since *Dortch,* and we therefore find that the district court did not err in admitting Maldonado's proffer statements for purposes of impeachment.

## III. Conclusion

For the reasons set forth above, we AFFIRM the district court's order denying Maldonado's motion to suppress and the judgment of conviction.