65 F.3d 170
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
DeWayne CROMPTON, Defendant-Appellant.
 No. 93-2369.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 2, 1995.
Decided Sept. 5, 1995.
 
 Before BAUER, COFFEY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Appellant DeWayne Crompton was convicted of possession of cocaine base with intent to distribute, 21 U.S.C. Sec. 841(a)(1). Crompton appeals the district court's denial of his motion to suppress evidence. Crompton maintains the search conducted by Wisconsin state troopers exceeded the scope of his consent. We affirm.
 
 I. FACTS
 
 2
 Crompton and codefendant Allan Hannon were en route from Indiana to Minnesota on October 20, 1992 in Crompton's Chevrolet station wagon. The vehicle broke down on the interstate near Hudson, Wisconsin between 10:30 and 11:00 p.m., and Hannon pulled the vehicle over to the side of the road. Wisconsin State Trooper Lawrence Brown, who was in the area running radar, drove over to the disabled vehicle to offer assistance. Hannon asked Brown to call a tow truck. Brown asked for Hannon's driver's license and ran a check on it while calling for a wrecker. The check revealed Hannon's Indiana license was suspended. Brown told Hannon he was going to issue him a citation, and asked Crompton if he had any identification. Crompton gave him an Indiana identification card with the name "James Moore." Brown ran a check on the name, which indicated "James Moore" did not have a valid Indiana license and that his California license had been revoked. At approximately this time, Inspector James Fetherston and Trooper Timothy Rye[1] arrived to assist.
 
 
 3
 The officers noticed several things that made them suspect drug-related activity, notably that the car contained a cellular phone, that the car was filled with fast food wrappers, and that Hannon and Crompton's accounts as to why they were headed for Minnesota were inconsistent. The officers suspected they had a "badger stop"--a possible drug interdiction--and ran a criminal history check on Hannon and "James Moore." The check of "James Moore" alerted Brown to Crompton's true identity and the fact that Crompton had numerous arrests for controlled substance offenses. When questioned, Crompton informed Brown he had legally changed his name to "James Moore."[2] Brown asked Crompton if he had any guns or drugs in the car. Crompton responded "no." Brown then asked if he could search the vehicle. At this point, the testimony of the officers and defendants diverged.
 
 
 4
 Crompton and Hannon maintain consent was refused, but that Brown searched the vehicle anyway. (Hearing Transcript I, Docket # 32 at 117-121; Hearing Transcript II, Docket # 54 at 20-21). Crompton further testified that Brown continued the search even after the tow truck arrived and Crompton asked to leave. (Hearing Transcript I, Docket # 54 at 20-21.) Brown testified that Crompton said "go ahead" when he asked to search. (Hearing Transcript I, Docket # 32 at 14). Brown further testified that when Crompton was asked to sign a consent form (which Brown had previously filled out), Crompton refused, but stated "Go ahead and search, but I ain't signing anything." (Id. at 14-15.) Brown again asked if he could search and Crompton answered in the affirmative. (Id.) Rye and Fetherston largely confirmed Brown's version in their testimony; however, Fetherston did not recall Crompton being asked permission a second time after Crompton refused to sign the consent form.[3] (Id. at 61-62, 107-112).
 
 
 5
 Both Hannon and Crompton were patted down, and Brown began the search. Brown quickly located a small quantity of marijuana in the glove compartment. He then unlocked the floor compartment in the rear area of the station wagon[4]. Brown testified that Crompton then said "That's just our food in there" and "Man, you are doing a thorough search." (Hearing Transcript I, Docket # 32 at 16). Neither Hannon nor Crompton made any effort to stop the search. Brown opened a bag he found in the compartment, which contained a cereal box. An examination of the cereal box revealed that it contained two duct-taped packages containing 800 grams of cocaine base.
 
 
 6
 Crompton moved to suppress the drug evidence, and a suppression hearing was held before Magistrate Judge Stephen Crocker. In addition to the officers and defendants, Detective David Hake testified that Crompton admitted consenting to the search in a post-arrest interview. The Magistrate Judge concluded that the consent to search was voluntary and that no limitations had been placed upon its scope. The Magistrate Judge further concluded that the search for narcotics could properly include containers within the vehicle. Judge Shabaz accepted the Magistrate Judge's recommendation. Crompton was convicted of possession of cocaine base with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1) and sentenced to life imprisonment.[5]
 
 II. ANALYSIS
 
 7
 On appeal, Crompton argues that Brown never specified the "object" of the search; as such, the consent to search only included the vehicle and not any containers within the vehicle, absent additional consent to search the containers.[6] The government maintains that Crompton consented to the search without any limitation on its scope. The government further maintains the containers were properly within the scope of the search.
 
 
 8
 This court reviews the denial of a motion to suppress evidence for clear error. United States v. James, 40 F.3d 850, 874 (7th Cir.1994), cert. denied, 115 S.Ct. 948 (1995). A decision is only clearly erroneous if "we are 'left with the definite and firm conviction that a mistake has been made.' " Id. (quoting United States v. Tilmon, 19 F.3d 1221, 1224 (7th Cir.1994)). Given the fact-specific nature of a motion to suppress, the district judge, who had the opportunity to hear the testimony and observe the witnesses, is entitled to special deference. Id.
 
 
 9
 Consensual searches are permissible under the Fourth Amendment. United States v. Maldonado, 38 F.3d 936, 940 (7th Cir.1994). As to the scope of a consensual search of an automobile, "[t]he Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open a particular container within the automobile." Florida v. Jimeno, 500 U.S. 248, 249 (1991). The standard for measuring the scope of consent is objective reasonableness--"what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Id. at 251. See also Maldonado, 38 F.3d at 940. Further, the scope of consent is generally defined by its expressed "object"--what the officers are looking for. Jimeno, 500 U.S. at 251. See also United States v. Saadeh, No. 93-2681, slip op. at 10 (7th Cir. July 20, 1995); Maldonado, 38 F.3d at 940. In the case of a search for drugs, consent to search the vehicle would include consent to search containers within the vehicle which might contain drugs, with no additional consent required to search closed containers within the vehicle. Jimeno 500 U.S. at 251-52. The Court noted the suspect could explicitly limit scope of the consent, however. Id. at 252. See also Maldonado, 38 F.3d at 941 (suspect can limit or withdraw consent).[7]
 
 
 10
 Crompton argues that Brown's general question regarding the presence of guns or drugs in Crompton's car did not sufficiently establish the "object" of the search. As such, Brown could not properly search containers within the vehicle without a separate consent[8]. This argument is unpersuasive.
 
 
 11
 While this court has not specifically addressed to what extent general comments regarding contraband adequately define the object of a search, colloquies nearly identical to that which occurred in this case have led to findings of proper consent to search. See Price, 54 F.3d at 344-45; United States v. Quinones-Sandoval, 943 F.2d 771, 773 (7th Cir.1991); United States v. Torres, 32 F.3d 225, 227-28 (7th Cir.1994). See also Saadeh, slip op. at 11 (statement that agents were looking for "money, narcotics and guns"); Maldonado, 38 F.3d at 940 (DEA agents statement to person in train station that they were looking for people carrying illegal drugs adequately identified object of search).[9] Brown inquired as to whether there were guns or narcotics in the vehicle. When Crompton responded no, Brown immediately asked for consent to search. Given the obvious nexus between the questions, a reasonable person would have understood that the objects of the search were guns and narcotics. Per Jimeno, Brown's inquiry, coupled with Crompton's consent, would indicate Brown could properly search Crompton's vehicle, including any containers that might contain drugs or guns.
 
 
 12
 Lastly, the suspect's conduct can assist in ascertaining consent and its scope; the suspect's failure to object can indicate consent. Maldonado, 38 F.3d at 940; Torres, 32 F.3d at 231. Crompton placed no explicit limitation on his consent, and neither he nor Hannon objected to the search, nor attempted to limit or withdraw consent while the search was taking place. Crompton's comment about the search being "thorough" is merely an aside. Further, Crompton's comment about "just food" being in the rear compartment is similarly unavailing. In Maldonado, this court affirmed the district court's conclusion that the suspect's protestations about gift wrapping being marred by the search did not indicate concern about the scope of the search (and an attendant desire to end it), but merely indicated concern about possible damage to the articles being searched. 38 F.3d at 941-42. Crompton's comment is even more equivocal.
 
 III. CONCLUSION
 
 13
 Crompton has presented no basis for overturning the district court's decision. The district court judgment is AFFIRMED.
 
 
 
 [1]
 Hannon and Crompton maintain Rye did not arrive until the narcotics were discovered and they were in custody
 
 
 [2]
 The appellant has indicated "DeWayne Crompton" is the name he wishes to go by
 
 
 [3]
 The consent form specifically provided for a search of all containers in the vehicle and disclosed that consent could be refused. It is undisputed that Crompton did not read the consent form
 
 
 [4]
 That model of Chevrolet station wagon has a storage compartment built into the floor of the rear cargo area. (Hearing Transcript I, Docket # 32 at 15-16.) As described, it functions as a trunk within a trunk
 
 
 [5]
 The sentence was based upon a criminal history category of VI and a total offense level of 38, which included an adjustment for obstruction of justice. Judge Shabaz applied 21 U.S.C. Sec. 841(b)(1)(A) and U.S.S.G. Sec. 5G1.1(b) because of Crompton's two prior felony drug convictions, which mandated a sentence of life imprisonment
 
 
 [6]
 While Crompton does not appear to have argued the "object" issue below, the government has not argued the matter is waived
 
 
 [7]
 The Supreme Court indicated there might be some limitations as to the type of containers that might be opened and the manner in which they might be opened. The Jimeno court stated that the rule announced would not permit the police to break open a locked brief case based upon a consent to search a vehicle. Id. at 251-52. Further, this court has noted that consent to search does not include permission to willfully damage the places or things being searched. United States v. Torres, 32 F.3d 225, 231-32 (7th Cir.1994)
 
 
 [8]
 Crompton relies heavily on the district court opinion in United States v. Reeves, 798 F.Supp. 1459 (E.D.Wash.1992), aff'd, 6 F.3d 660 (9th Cir.1993). The Reeves court held that a generalized inquiry as to whether a suspect's vehicle contained weapons, narcotics, or large amounts of cash was not sufficient to reasonably define the "object" of a subsequent oral request to search the vehicle. Id. at 1468. The Reeves case, however, is readily distinguishable. First, in Reeves it was unclear as to how soon after the inquiry regarding contraband that the officers asked to search. See 798 F.Supp. at 1462-63, 1468 n. 5. In contrast, Brown asked to search immediately after inquiring about the presence of drugs or guns in the car. (Hearing Transcript, Docket # 32 at pp. 14, 44-45). Second, the Reeves court relied upon the "locked briefcase exception" in Jimeno. This "exception" has no application here, as the drugs were stored in a cereal box which was in turn stored in a bag. That Brown unlocked and opened the rear floor compartment of the car does not change this result, as the compartment is not a separate container. The officer had consent to search the vehicle, and the floor compartment is as much an integral part of the vehicle as the glove compartment and the rear cargo area
 
 
 [9]
 We note parenthetically that this court has indicated that it may be possible to have consent without an object, with consent being an independent ground to justify a search. See McGann v. Northeast Illinois Reg. Commuter Railroad, 8 F.3d 1174, 1178 (7th Cir.1993). Further, other circuits have indicated that the failure to specify the object of the search does not invalidate the search. See United States v. McSween, 53 F.3d 684, 688 (5th Cir.1995); United States v. Snow, 44 F.3d 133, 135 (2nd Cir.1995). See also United States v. Mire, 51 F.3d 349, 352 (2nd Cir.1995)