85 F.3d 632
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Barry CLEAVES, Defendant-Appellant.
 No. 95-3257.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 28, 1996.
Decided April 25, 1996.
 
 Before COFFEY, EASTERBROOK and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Barry Cleaves entered a conditional plea of guilty to possession with intent to distribute cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1), reserving the right to withdraw his plea, Fed.R.Crim.P. 11(a)(2), upon a successful appeal of the district court's denial of his motion to suppress the cocaine. Cleaves was sentenced to a 63-month term of imprisonment to be followed by 5 years of supervised release. On appeal, Cleaves challenges the district court's denial of his motion to suppress. For the following reasons, we affirm.
 
 
 2
 On February 2, 1995 at 8:35 p.m., Carbondale police officers Jeff Grubbs and Dee Cross were following a vehicle driven by Wilbur Johnson. Cleaves was a front seat passenger in the vehicle. The officers observed Johnson make three turns without signalling, and saw Cleaves throw something out of the car window. The officers stopped the vehicle, and a third officer, Steve McBride, was sent to locate the object thrown from the car. Johnson informed the officers that his signal was not working and gave Officer Grubbs verbal and written consent to search his car for guns and drugs. Officer Grubbs entered the car to perform the search, and Cleaves and a back seat passenger were told to exit the vehicle. Upon returning from his search, Officer McBride asked Cleaves if he was carrying any weapons or drugs.[1] Cleaves stated that he was not. Thereafter, Officer McBride asked Cleaves for permission to perform a patdown search. Cleaves consented. Before the search was initiated, Cleaves began to remove his jacket. However, because of the cold weather, Officer McBride informed Cleaves that he could leave the jacket on, which he did. Cleaves then raised his arms to allow Officer McBride to conduct the search. When Officer McBride reached the chest pocket of Cleaves' jacket, he felt what he believed to be rocks of crack cocaine. At that instant, Cleaves dropped his arms and attempted to put his hands into his jacket pocket. Officer McBride stopped Cleaves and seized a plastic baggie containing 17.7 grams of crack cocaine.
 
 
 3
 On February 8, 1995, Cleaves was charged, in a one-count indictment, with possession with intent to distribute crack cocaine. Cleaves filed a motion to suppress the crack cocaine seized during the patdown search, arguing that by attempting to remove his jacket before the search, he limited the scope of the search. Since Cleaves did not demonstrate that there existed a dispute as to any material fact--Cleaves and the government entered into a stipulation of facts surrounding the traffic stop and search--no evidentiary hearing was held. The district court denied Cleaves' motion to suppress.
 
 
 4
 On June 16, 1995, Cleaves entered into a conditional plea of guilty to the indictment, reserving the right to withdraw his plea upon a successful appeal of the district court's denial of his motion to suppress. Cleaves was sentenced and this timely appeal follows.
 
 ISSUE
 
 5
 On appeal, Cleaves challenges the district court's denial of his motion to suppress. Specifically, he maintains that in attempting to remove his jacket prior to the patdown search, he excluded the jacket from the scope of his consent to search and, therefore, the seizure of the crack cocaine from his jacket pocket was unlawful.
 
 STANDARD OF REVIEW
 
 6
 The district court's denial of a motion to suppress is reviewed under a clearly erroneous standard. United States v. Maldonado, 38 F.3d 936, 939 (7th Cir.1994), cert. denied, 116 S.Ct. 205 (1995). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991); Maldonado, 39 F.3d at 940.
 
 DISCUSSION
 
 7
 Cleaves does not contest that he consented to a patdown search or that the scope of this initial consent included a patdown of his jacket. Rather, he argues that by attempting to take off his jacket before the search was conducted, he excluded the jacket from the scope of his consent to search. We disagree.
 
 
 8
 It has long been the law that consensual searches are permissible under the Fourth Amendment. Jimeno, 500 U.S. at 250-51; Maldonado, 38 F.3d at 940. However, consent searches are valid only if the consent was voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); United States v. Betts, 16 F.3d 748, 753 (7th Cir.1994). Additionally, "a suspect may ... delimit as he chooses the scope of the search to which he consents." Jimeno, 500 U.S. at 252. Even after consent has been given, a defendant always has the opportunity to limit its scope or withdraw it altogether--provided, of course, that the withdrawal of consent occurs before any evidence of illegal activity is discovered. United States v. Jachimko, 19 F.3d 296, 299 (7th Cir.1994); United States v. Dyer, 784 F.2d 812, 816 (7th Cir.1986). However, it is up to the defendant to effectively communicate his intent to narrow the scope of his consent. United States v. Hardin, 710 F.2d 1231, 1236-37 (7th Cir.), cert. denied, 464 U.S. 918 (1983).
 
 
 9
 In denying Cleaves' motion to suppress, the district court provided:
 
 
 10
 In the instant case, it is uncontested that the initial consent would allow an officer to objectively believe that he could conduct a pat-down search that included the jacket. The question becomes whether merely attempting to take the jacket off is enough to indicate to the officer that Cleaves was limiting the scope of the consent. The Court holds that it was objectively reasonable for McBride to search the jacket because a reasonable officer would not interpret the act of removing the jacket as an attempt to limit the scope of the search. Cleaves could have told McBride not search the jacket. However, he did not. When McBride told Cleaves to leave the jacket on, Cleaves did not protest. Under the circumstances, it cannot be said that Cleaves attempted to limit the scope of his consent.
 
 
 11
 (R. 20 at 3-4.)
 
 
 12
 The circumstances surrounding the patdown search are described in the stipulation of facts entered into between Cleaves and the government:
 
 
 13
 Officer McBride asked defendant if he had any weapons or drugs on him. Defendant responded that he did not. McBride then asked defendant for permission to perform a patdown search. Defendant said "O.K.". Defendant started to take off his jacket. The temperature was well below freezing, and McBride told defendant that he could leave his jacket on. Immediately thereafter, defendant raised his arms so that McBride could begin the patdown search. When McBride got to the chest pocket of defendant's jacket, McBride felt what he believed to be rocks of crack cocaine. At that moment, defendant dropped his arms and frantically attempted to put his hands into the jacket chest pocket. McBride stopped defendant and seized a plastic baggie of crack cocaine from defendant's chest pocket.
 
 
 14
 (R. 28 at 2-3.)
 
 
 15
 Cleaves' attempt to remove his jacket, without more, does not demonstrate an intent to exclude the jacket from the scope of the patdown search. Cleaves might have removed his jacket in an attempt to expedite, rather than impede, the search. Indeed, there is no indication in the record that Cleaves ever asked if he could remove the jacket prior to the search. Nor is there any evidence that Cleaves was coerced into leaving his jacket on. Cleaves was not ordered to wear the jacket--Officer McBride told Cleaves that he could leave the jacket on because it was cold. Since Cleaves never protested, Officer McBride had no reason to believe that Cleaves intended to exclude the jacket from the patdown search. Clearly, the record supports the district court's finding that Cleaves could have excluded his jacket from the scope of his consent to search, but chose not to. Since Cleaves voluntarily consented to a full patdown search, the district court's denial of his motion to suppress was proper.
 
 
 16
 Even if we found that Cleaves had limited the scope of his consent to exclude his jacket, the search of Cleaves (and his jacket) would have been permissible as a patdown search for weapons under Terry v. Ohio, 392 U.S. 1 (1968). Since such a search would have revealed the crack cocaine in Cleaves' jacket pocket, the district court would have been justified in denying suppression of the crack cocaine even if the search of Cleaves' jacket had been non-consensual--the crack cocaine would have otherwise been lawfully discovered. See United States v. Jackson, 901 F.2d 83, 84-85 (7th Cir.1990).
 
 
 17
 A protective pat-down for weapons is appropriate whenever "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27; United States v. Fryer, 974 F.2d 813, 819 (7th Cir.1992), cert. denied, 113 S.Ct. 2418 (1993). Additionally, "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; Michigan v. Long, 463 U.S. 1032, 1049 (1968); Fryer, 974 F.2d at 819.
 
 
 18
 The facts surrounding the search are as follows. Cleaves was a passenger in a car which was being followed by the police. The car made three turns without signalling, and Cleaves threw something from the car. Subsequently, the car was stopped by the police. During the stop, one of the officers, Officer McBride, noted that Cleaves appeared very nervous and his hands were moving in "short, jerking movements." Another officer, Officer Cross, who had previous dealings with Cleaves and was aware of his prior criminal history--including an incident of armed robbery--observed that Cleaves was extremely nervous (more nervous than Cross had seen him in the past) and that his hands were shaking. Considering the suspicious activity preceding the stop, Cleaves' nervous behavior during the stop, as well as Officer Cross' knowledge that Cleaves had previously been involved in violent criminal activity, a patdown search for weapons would have been justified.
 
 
 19
 For the foregoing reasons, the district court's denial of Cleaves' motion to suppress is AFFIRMED.
 
 
 
 [1]
 There is no indication in the record that Officer McBride discovered the object thrown from the vehicle