PER CURIAM: *
Appellant Alexis Gonzalez-Badillo appeals the district court’s denial of his motion to suppress evidence. He contends *313 that a Laredo police officer exceeded the scope of his consent when the officer, while searching a travel bag, opened the sole of a boot to find illegal drugs. Because Gonzalez-Badillo’s consent, extended to the boot sole, we AFFIRM the district court’s judgment.
BACKGROUND
Police searched Gonzalez-Badillo’s boot sole as part of a criminal interdiction effort at the Americanos Bus Station in Laredo, Texas on April 10, 2015. Gonzalez-Badillo had been in line to board a bus to Houston when he made several “strange” comments, about his itinerary to Laredo police officer Rogelio Nevarez. Officer Nevarez subsequently asked and received permission to search Gonzalez-Badillo’s travel bag. Before searching the bag, Officer Nevarez took Gonzalez-Badillo’s California identification card, apparently keeping it throughout the encounter. He then informed Gonzalez-Badillo that he was looking for anything illegal traveling through the bus station.
The magistrate judge’s report and recommendations describe the specifics of the search:
As soon as Officer Nevarez opened the bag, he smelled a strong chemical odor that he recognized as a masking agent used in drug smuggling. Officer Nevarez further observed a pair of used work boots inside of translucent plastic shopping bags. When Officer Nevarez grasped the bags containing the boots, he could feel that the soles of the boots were lumpy. Officer Nevarez compared it to the feeling of soles full of sand instead of the normal hard soles of work boots. Officer Nevarez further testified that he had felt boots like this before that were- being used to smuggle drugs and had seen this method of drug smuggling during trainings. At this point, Officer Nevarez informed Defendant that he was “99% sure” that there were drugs in the boots and put the boots up for Defendant to smell them. Officer Nevarez testified that Defendant then began sweating more and made a surprising face.
When Officer Nevarez removed the boots from the plastic bags, he observed a small opening on the side of one of the boots where it appeared that the sole wasn’t glued all the way shut. Officer Nevarez could see plastic inside the sole of the boot by manipulating the boot to look through the slit in the side of the sole without increasing the size of the opening. At that point, Officer Nevarez used his fingers to pull open the boot from this opening, which revealed a plastic bag containing a brown rocky substance, later confirmed to be heroin. Defendant was then placed under arrest and read his Miranda rights,
Gonzalez-Badillo initially invoked his constitutional right to remain silent. But he later agreed to make inculpatory statements, first to Laredo police, and then to Drug Enforcement Administration (“DEA”) agents. While, in DEA custody, Gonzalez-Badillo also signed written waivers of his rights and provided a written statement.
Gonzalez-Badillo subsequently moved to suppress all physical evidence seized by police and statements made while in custody. The magistrate judge held a suppression hearing on July 6, 2015. He recommended that the district court deny Gonzalez-Badillo’s motion to suppress the physical evidence, but grant it regarding the inculpatory statements. After independently reviewing the facts of the case and relevant case law, the district court adopted the magistrate judge’s recommendation on January 15, 2016. Gonzalez-Ba- *314 dillo timely appeals from the district court’s judgment.
STANDARD OF REVIEW
“When we review a distinct court’s denial of a motion to suppress, we view the facts in the light most favorable to the prevailing party, accepting the district court’s factual findings unless clearly erroneous and considering all questions of law de novo.” United States v. Menchaca-Castruita, 587 F.3d 283, 289 (5th Cir. 2009).
DISCUSSION
Gonzalez-Badillo claims that the district court erred when it denied his motion to suppress evidence found in the boot sole. First, he argues that his consent to search the travel bag did not extend to a search of the boot sole. Second, he asserts that no other exceptions to the Fourth Amendment’s warrant requirement apply here. Because we find that Gonzalez-Badillo consented to the search, we need not address his other arguments.
“A search conducted pursuant to consent is one of the well-settled exceptions to the Fourth Amendment’s warrant requirement.” United States v. Tompkins, 130 F.3d 117, 121 (5th Cir. 1997). “The standard for measuring the scope of a suspect’s consent under the Fourth Amendment is that of ‘objective’ reasonableness— what would the typical reasons person have understood by the exchange between the officer and the suspect?” Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).
As stated above, Gonzalez-Badillo does not contest that he consented to the search of his travel bag. Instead, he argues that Officer Nevarez’s search of the boot sole exceeded the scope of his initial consent. To determine the scope of consent, the following factors inform our analysis: First, “a reasonable person would have understood [his] consent for the search of his luggage to include permission to search any items inside his luggage which might reasonably contain drugs.” United States v. Maldonado, 38 F.3d 936, 940 (7th Cir. 1994). For example, in Maldonado, the Seventh Circuit concluded that the scope of the defendant’s consent extended to a closed juicer box that was taped shut, even though “Maldonado testified that he told Agent Boertlein that he did not want to open the juicer boxes because the items inside were gift wrapped.”[1] Id. at 938. The court reasoned that Maldonado should have expected drug enforcement officers would open the boxes because they told him that “they were looking for individuals traveling with large quantities of illegal drugs.” Id. at 940. Furthermore, “[t]he juicer boxes found in Maldonado’s luggage *315 had been repackaged and closed with tape, and such boxes may be thought by a reasonable person to contain drugs.” Id.
Similarly, Officer Nevarez explicitly informed Gonzalez-Badillo that he was looking for anything illegal traveling through the bus station and asked for consent to search the bag. See Jimeno, 500 U.S. at 251, 111 S.Ct. 1801 (“The scope of a search is generally defined by its expressed object.”). In addition, Officer Nevarez reasonably concluded that the boots were inherently suspicious: (1) Gonzalez-Badillo’s bag and boots smelled of drug-masking agent; (2) the boots were unlike normal boots: the soles were “lumpy” as if they were “full of sand instead of the normal hard soles of work boots;” (3) the boot soles were already damaged and had “plastic” clearly visible inside; and (4) similar boots had been used as vehicles for drug smuggling. Furthermore, given that Officer Nevarez explicitly informed Gonzalez-Badillo that he believed the boots contained drugs and “put the boots up for [him] to smell” before opening the sole, Gonzalez-Badillo “should have expected that [Officer Nevarez] would examine the[ir] contents.” See Maldonado, 38 F.3d at 940 (quoting United States v. Berke, 930 F.2d 1219, 1223 (7th Cir. 1991)).
Second, “courts can look at the defendant’s conduct to help determine the scope of a consensual search.” Id. For example, “[a] failure to object to the breadth of the search is properly considered an indication that the search was within the scope of the initial consent.” United States v. Mendoza-Gonzalez, 318 F.3d 663, 670 (5th Cir. 2003). Here, we find that Gonzalez-Badillo’s conduct during the search suggests that the scope of his consent extended to the boot sole. Importantly, Gonzalez-Badillo did not revoke or limit his consent to search his bag, even when Officer Nevarez indicated that he believed the boots contained drugs and offered them to Gonzalez-Badillo to smell. Instead, “Defendant ... began sweating more and made a surprising face.” Gonzalez-Badillo also did not limit the search as Officer Nevarez continued to examine the boots, eventually using his fingers to pull open the sole from the already present hole.[2] Id.
Gonzalez-Badillo correctly points out that, although a general consent to search encompasses unlocked containers, locked containers require special consent or a warrant. See Jimeno, 500 U.S. at 251-52, 111 S.Ct. 1801 (“It is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk....”). He also claims that this case is very similar to United States v. Osage, 235 F.3d 518, 520 (10th Cir. 2000), where the Tenth Circuit found that searching inside a sealed can of tamales exceeded the scope of the defendant’s consent to search his luggage. In that case, the court “conclude[d] that the opening of a sealed can, thereby rendering it useless and incapable of performing its designated func *316 tion, is more like breaking open a locked briefcase than opening the folds of a paper bag.” Id. at 521. It also stated: “[Bjefore an officer may actually destroy or render completely useless a container which would otherwise be within the scope of a permissive search, the officer must obtain explicit authorization, or have some other, lawful, basis upon which to proceed.” Id. at 522. Analogizing to Osage, Gonzalez-Badillo suggests that Officer Nevarez’s search of the boot sole was “more like breaking open a locked briefcase” because he had to pull open the sole to recover the drugs inside. Id. at 521.
However, Gonzalez-Badillo’s argument is not persuasive. First, Osage is not binding authority, and furthermore, the facts there are distinguishable from those here. Unlike in Osage, the record does not show that Officer Nevarez “destroyed]” the already-damaged boots or rendered them any less useful than they had been before the sole was pulled open from a pre-exist-ing hole. Id. at 520. Moreover, we are not persuaded that Gonzalez-Badillo’s boot should be considered akin to a locked container simply because Officer Nevarez opened up the boot sole to recover drugs. Here, Officer Nevarez’s actions inflicted minimal damage on the boot, the sole of which had previously been pried open and glued down to insert drugs. Compare United States v. Marquez, 337 F.3d 1203, 1209 (10th Cir. 2003) (stating that “[i]f damage to the compartment did occur” as the result of officers’ prying open a nailed-down plywood covering, “it was de minim-is in nature”), with United States v. Ibarra, 965 F.2d 1354, (5th Cir. 1992) (en banc) (7-7 decision) (“We would hold that a typical reasonable person would not have interpreted Chambers’ consent to extend to breaking the boards securing the attic entrance.”), and United States v. Strickland, 902 F.2d 937, 942 (11th Cir. 1990) (“[I]t is difficult to conceive of any circumstance in which an individual would voluntarily consent to have the spare tire of their automobile slashed.”). Given that Gonzalez-Badillo’s boot was not akin to a locked container, the district court did not err. See Jimeno, 500 U.S. at 251-52, 111 S.Ct. 1801.
CONCLUSION
For the reasons stated above, we AFFIRM the judgment of the district court.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

. The dissent argues that we “attempt[] to downplay the significance of the officer’s testimony in Maldonado that the suspect consented to the search of his bag” even though "the Seventh Circuit’s decision expressly relied on” the testimony. However, counter the dissent’s argument, the officer's testimony in Maldonado did not play a critical role in the Seventh Circuit’s analysis. While it noted that "the district court never discredited [the officer's] testimony,” it based its holding on "all the surrounding circumstances” including the district court’s finding that "Maldonado did not withdraw his consent, nor did he limit the scope of his consent in the sense of refusing to allow Agent Boertlein to look inside the juicer boxes.” See Maldonado, 38 F,3d at 940-41. Furthermore, the Seventh Circuit stated that “[d]etermining the parameters of a consensual search is an issue of fact that must be distilled from the totality of the circumstances surrounding the search; moreover, the resolution of such factual questions is entrusted to the district court and will not be lightly overturned on appeal." Id. at 941. The district court acknowledged that Maldonado disputed the officer's testimony and "made no explicit determination as to which testimony it found more credible[.]” Id. at 938.

. The dissent argues that "Gonzalez-Badillo's failure to object when Officer Nevarez began prying the sole from the boot is of little probative value” because "[a]ll parties agree that the search was within the scope of consent up until the point of separating the sole from the boot” and ”[t]here is no indication that Gonzalez-Badillo had any meaningful opportunity to object between the time Officer Nevarez was looking through the slip and when he separated .the sole from the boot.” We disagree. When Officer Nevarez informed Gonzalez-Badillo that he believed the boots contained drugs, Gonzalez-Badillo was clearly on notice that Officer Nevarez intended to search them. See Maldonado, 38 F.3d at 940. Consequently, Gonzalez-Badillo had the opportunity to limit his consent at any point between the time when Officer Nevarez made his suspicions known and when he actually opened the sole.