**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 7 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CARLOS FELIX,

      Defendant-Appellant.

No. 00-4157
(D.C. No. 99-CR-515-C)
(District of Utah)

**ORDER AND JUDGMENT**[*]

Submitted on the Briefs:

Before **EBEL**, **PORFILIO**, and **HENRY**, Circuit Judges.

Carlos Felix challenges his conviction for possession of cocaine with intent to

distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Mr. Felix contends

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

officers searching the vehicle in which the drug was secreted exceeded the scope of the consent for the search. We affirm.

Mr. Felix and co-defendants, Angelica Bugarin and Martin Avila, were traveling companions whose van broke down in Richfield, Utah. The mechanic who examined the van became suspicious and contacted the local police on September 1, 1999, when the trio offered him $4,000 in cash if the van could be fixed quickly. Upon learning the van could not be fixed as quickly as they liked, the travelers made the unusual request to have the van towed 500 miles to Denver, Colorado.

Lt. Alan DeMille of the Richfield Police responded and approached the travelers while the van was awaiting departure to Denver. Finding Ms. Bugarin was the only one who spoke English, Lt. DeMille questioned her about the ownership of the van. Ms. Bugarin claimed the van belonged to a friend in California, and in response to further questioning, indicated she and the others had been traveling to Denver for a wedding on August 28, when the van broke down. They had decided to have the van towed to Denver, even though they had missed the wedding, because they thought it could be repaired more quickly there.

Lt. DeMille then asked Ms. Bugarin for permission to search the van. She consented, and then spoke with Mr. Avila in Spanish, retrieved the van's keys from him, and turned them over to Lt. DeMille. Lt. DeMille invited the travelers to observe him

search the vehicle, and after a short time in the towing company office, they moved to a position outside from where they could see the van and the search.

The van was parked on a flatbed tow truck, and Lt. DeMille climbed up and began a search of the passenger spaces. He immediately located a gallon container full of gasoline in the passenger compartment. Lt. DeMille was joined in the search by Detective Kerry Ecker of the Utah Narcotics Task Force. Together the two located a second gallon container also full of gasoline in the passenger compartment. This alerted the two officers because, in their experience, travelers secreting contraband in a hidden compartment in a vehicle's gasoline tank need to carry extra gasoline to make up for the reduction in fuel tank capacity.

The two officers proceeded to look at the underside of the van. Their view was limited, but the officers noted several indications the gasoline tank had been recently removed. The bands holding the gasoline tank in place were not as dirty as the tank itself, and the bolts securing the bands showed no evidence of undercoating as did the rest of the vehicle, yet displayed no rust.

Pursuant to a request from Detective Ecker, K-9 officers then arrived. Two dogs were placed on the flatbed trailer, and one alerted slightly near the van's gasoline tank. The other dog did not alert. Concerned that the flatbed did not provide the dogs with adequate room, the officers decided to remove the van from the flatbed. After moving the

van to the floor of the shop, the dogs again swept the van; both alerted to the underside of the vehicle near the gasoline tank.

Another visual inspection was made of the van's underside, as officers could now crawl beneath it. In addition to the details mentioned before, officers noticed discoloration on the gasoline tank. Detective Ecker, who had worked as a welder, believed the discoloration was due to the heat from a welding torch. He concluded a compartment had been cut into the gasoline tank with a welding torch.

The officers then raised the rear of the van with a jack and loosened the bolts securing the bands holding the gasoline tank in place to examine the top of the tank. Upon lowering the tank, the officers were able to observe the top of the tank and several white plastic bags that were protruding from a compartment cut into the top of the tank. Upon the discovery of the compartment, Mr. Felix and his companions were arrested. The van was moved to a nearby garage hoist and hoisted up; the gasoline tank was removed, and under the white plastic bags fifteen one-kilogram packages of cocaine were discovered.

Based on the search of the van, Mr. Felix filed a motion to suppress the cocaine, arguing he did not personally consent to the search of the vehicle, and thus the search was invalid against him. The district court properly denied the motion, and Mr. Felix entered a conditional plea of guilty, reserving the right to appeal the denial of the motion to

suppress. On August 21, 2000, Mr. Felix was sentenced to 70 months' incarceration, to be followed by 36 months of supervised release. This appeal followed.

On appeal, Mr. Felix changes the thrust of his argument. He now argues officers exceeded the scope of the general consent given to search the van by dismantling the gasoline tank and rendering the van unusable. Because Mr. Felix did not raise this argument below, it is subject only to plain error review here. *United States v. Ramirez*, 63 F.3d 937, 947 (10th Cir. 1995). Review for plain error has three requirements: 1) an error, 2) that is plain, and 3) an effect on substantial rights. *Johnson v. United States*, 520 U.S. 461, 466-67 (1997). Only if all three requirements are met may we exercise our discretion to notice a forfeited error, but only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* Mr. Felix cannot meet these requirements.

Mr. Felix first argues the officers' search of the van exceeded the scope of the consent given. The scope of a consent search is limited by the breadth of the consent given. *United States v. Wacker*, 72 F.3d 1453, 1470 (10th Cir. 1996). The measure of the breadth of the consent is objective, based on what a typical reasonable person would have believed he was consenting to in the exchange with the law enforcement official. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

Mr. Felix relies primarily on two cases from this Court in making his argument. First, he cites our recent decision in *United States v. Osage*, 235 F.3d 518 (10th Cir.

2000). In *Osage* the defendant, traveling by train, consented to a search of his bag. The searching officer opened several sealed metal cans, believing they had been tampered with. We overturned the results of the search despite the consent and the defendant's failure to object to the cans' opening at the time. We held the search failed the objective reasonableness test because the containers would be rendered useless by the officer's actions. *Id.* at 521. In *United States v. Anderson,* 114 F.3d 1059 (10th Cir. 1997), we confronted the removal of a gasoline tank directly. After giving consent for a search of his car during a traffic stop, the defendant protested when the officer, having discovered evidence the gasoline tank had been tampered with, informed him the gasoline tank would need to be removed. After the defendant refused, the officer arrested him, impounded the car and discovered six kilos of cocaine secreted in the gasoline tank. In reviewing a motion to suppress, we held the consent search allowed a visual inspection of the gasoline tank, but the removal and dismantling of the tank were supported by probable cause. *Id.* at 1065-66.

Mr. Felix argues that taken together these two cases establish the officers exceeded the scope of the consent search when they removed the gasoline tank from the van. Removing the tank, he says, rendered the van useless, and dismantled the vehicle. Because the search in *Anderson* was justified on the basis of probable cause, and not on consent, a consent search does not extend to the dismantling of a gasoline tank.

- 6 -

Mr. Felix has significantly overstated the application of these cases to his cause and has ignored the bulk of our jurisprudence on this issue. The *Osage* case speaks only to containers, and not to parts of a vehicle itself. Further, even if the gasoline tank is considered a container, a key aspect of the *Osage* holding is a search exceeds the scope of consent when it renders the container useless or destroys it. Here, the officers merely unscrewed the gasoline tank from its moorings and tipped the top into view. The tank could be restored to its previous condition in minutes. It was not destroyed or rendered useless. While we relied on probable cause to uphold the dismantling of the gasoline tank in *Anderson*, there the driver protested, and no finding was made as to the limitation of a consent search in which the defendant remains silent, as he did here. Thus, Mr. Felix argues from *Anderson* based only on inference. Further, the officers here did not dismantle the gasoline tank; they only lowered the top into view, a significantly less intrusive search.

Our case law recognizes permission to search contemplates a thorough search. *United States v. Torres*, 663 F.2d 1019, 1027 (10th Cir. 1981). Specifically, we have recently held officers with consent to search may search the entire vehicle if the suspect "does not limit the scope of a search, and does not object when the search exceeds what he later claims was a more limited consent." *United States v. Bustillos-Munoz*, 235 F.3d 505, 515 n.5 (10th Cir. 2000). We have also upheld general consent searches that partially disassembled vehicles when the defendant did not object. *See United States v.*

*McRae,* 81 F.3d 1528, 1537-38 (10th Cir. 1996) (removing trunk carpeting); **United States v. Santurio**, 29 F.3d 550, 553 (10th Cir. 1994) (unscrewing strip holding down interior carpet and removing carpet); **United States v. Pena**, 920 F.2d 1509, 1515 (10th Cir. 1990) (removing rear quarter panel vent and cardboard found beneath); **United States v. Espinosa**, 782 F.2d 888, 892 (10th Cir. 1986) (removing back seat).

Neither Mr. Felix, nor his traveling companions, protested the officers' actions. The gasoline tank was only lowered to allow the officers to examine its top and could be restored to its place in minutes. The vehicle was already inoperable, so the officers' actions did not impair it in anyway. The officers here acted within the scope of the consent, and the district court committed no error in upholding the search and denying Mr. Felix's motion to suppress.

Even were we to consider the district court mistaken, and the error a plain one, Mr. Felix would not obtain the relief he seeks. Mr. Felix asserts the search clearly affected his rights because the officers did not have probable cause to search the gasoline tank. Thus without the illegal search, there would be no evidence against him, and he would have been free. This argument must fail because the searching officers had ample probable cause to search the gasoline tank by the time they lowered it.

At the time the officers lowered the top of the gasoline tank into view they knew of all of the following: 1) the travelers' offer to pay $4,000 in cash to have the van repaired; 2) their desire to have it immediately towed to Denver some 500 miles away, despite

having already missed the wedding to which they traveled; 3) the discovery of the two gallon-sized containers of gasoline inside the van; 4) the anomalies apparent when the gasoline tank was visually inspected (fresh bolts, clean bands holding the tank, heat discoloration from welding); 5) two narcotics dogs alerted to the underside of the van once it was accessible to them. Together these circumstances led to a reasonable conclusion that the gasoline tank had been altered and contained contraband. Thus, even if the district court erred, there is no effect on Mr. Felix's rights, and thus no plain error. **AFFIRMED**.

ENTERED FOR THE COURT

John C. Porfilio
Senior Circuit Judge